[Cite as *State v. Richards*, 2017-Ohio-1198.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27139 |
| | : | |
| v. | : | T.C. NO. 16CRB1252 |
| | : | |
| JILL A. RICHARDS | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# O P I N I O N

Rendered on the ___31st___ day of _____March_____, 2017.

. . . . . . . . . .

JOSHUA T. SHAW, Atty. Reg. No. 0087456, Assistant City Prosecutor, 335 W. Third Street, Rm. 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

J. JOSEPH HYDE, Atty. Reg. No. 0093802, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jill A. Richards appeals her conviction and sentence for possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree.   Richards filed a timely notice of appeal with this Court.

{¶ 2} The incident which forms the basis for the instant appeal occurred on the night of March 2, 2016, at approximately 11:24 p.m., when Dayton Police Officers

Wolodkiewicz and Gross initiated a traffic stop of white Ford Explorer with an expired license plate. The traffic stop occurred at the corner of South Findlay Street and Davis Avenue in Dayton, Ohio. Richards was one of four occupants in the vehicle, and she was sitting in the front passenger seat. Upon making contact with the occupants of the vehicle, Officer Wolodkiewicz recognized one of the passengers in the back seat as an individual with a history of illegal drug use. Based upon his observation, Officer Wolodkiewicz called in a request for a K-9 unit to come and perform an open air sniff around the vehicle.

{¶ 3} While waiting for the K-9 unit to arrive, Officer Wolodkiewicz ordered all of the occupants to step out of the vehicle. All of the vehicle's occupants, including Richards, were patted down for weapons and told to stand together on the side of the road to the right rear of the vehicle. Shortly thereafter, Dayton Police Officer Reynolds arrived at the scene with his K-9 unit and proceeded to lead the dog around the exterior of the vehicle. While the K-9 unit did not sniff Richards or any of the other occupants, it did alert at the right side of the vehicle.

{¶ 4} Because of the K-9 unit's alert, Officer Reynolds and newly arrived Officer Patterson began a systematic search of the interior of the vehicle. In the trunk area of the vehicle, the officers discovered a hypodermic needle underneath various parts of a vacuum cleaner. The officers also found parts of another hypodermic needle under the right rear seat in the vehicle. After searching the back seat and trunk area, Officer Patterson began searching the front portion of the vehicle. Officer Patterson searched the front seat area, the glove box, and the center console. Officer Patterson testified that he also searched the area immediately surrounding the outside of the vehicle with an LED

flashlight but failed to find any additional contraband. We note that neither Officer Wolodkiewicz nor Officer Patterson, the only witnesses who testified at trial, was the police officer who patted Richards down.

{¶ 5} After concluding their search of the vehicle, the officers placed the two back seat passengers in separate police cruisers. Because of the cold weather, Officers Wolodkiewicz and Patterson permitted the driver and Richards to get into the Explorer. Officer Wolodkiewicz testified that he and Officer Patterson escorted the driver back to the driver's seat while Richards was permitted to walk back to the front passenger seat unaccompanied. While they were standing on the driver's side of the vehicle, the officers heard the sound of glass hitting the ground as Richards got into the front passenger seat. Officer Wolodkiewicz testified that he immediately walked around the back of the vehicle to the passenger side where he discovered a glass drug pipe lying on the pavement near the front passenger door. Officer Wolodkiewicz testified that the pipe was on the pavement approximately one foot away from the vehicle near the front running board. Officers Wolodkiewicz and Patterson both testified that they observed no furtive movements from the driver of the vehicle prior to hearing the glass pipe hit the ground, nor was anyone standing near Richards when she entered the vehicle from the front passenger side door directly near where the pipe was located.

{¶ 6} Officer Wolodkiewicz testified that he asked Richards about the pipe, but she denied it was hers and became belligerent. Thereafter, Richards was arrested for possession of drug paraphernalia and transported to jail. Officer Wolodkiewicz collected the pipe and submitted it to the Miami Valley Regional Crime Lab for analysis. The pipe tested positive for cocaine and methamphetamine. The pipe was not tested for

fingerprints.

{¶ 7} At her arraignment on March 3, 2016, Richards pled not guilty and was released on her own recognizance. Richards failed to appear at a pre-trial conference on March 15, 2016, and the trial court issued a capias for her arrest. Richards was later arrested on the outstanding warrant on April 3, 2016. The trial court scheduled Richards' trial date for April 12, 2016. On April 4, 2016, Richards posted bail and was released from custody on the same day.

{¶ 8} Thereafter, Richards failed to appear for her trial date on April 12, 2016, and the court issued a second warrant for her arrest. Richards was arrested two days later on April 14, 2016. Richards' trial was scheduled for April 25, 2016. Richards remained in custody until the day of her trial. On April 25, 2016, a bench trial was held, and the court found Richards guilty of possession of drug paraphernalia. On May 4, 2016, the trial court sentenced Richards to time served and terminated the case. On July 25, 2016, the trial court filed a *nunc pro tunc* entry providing the details of Richards' sentence. Specifically, the trial court stated that it sentenced Richards to twenty-three days in jail with credit for the twenty-three days she served while the case was pending.

{¶ 9} It is from this judgment that Richards now appeals.[1]

---

[1] In general, " '[w]here a criminal defendant, convicted of a misdemeanor, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction.' " *State v. Byrd,* 185 Ohio App.3d 30, 2009–Ohio–5606, 923 N.E.2d 161, ¶ 10 (2d Dist.), quoting *State v. Golston,* 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994).

The State has not asserted that Richards' appeal is moot, and the mootness doctrine does not apply where a defendant is sentenced to time served prior to trial, *see Byrd* at ¶ 12, which is the case with her conviction for possession of drug paraphernalia. In an abundance of caution, and in the absence of any assertion of

{¶ 10} Because they are interrelated, we will discuss Richards' first and second assignments together as follows:

{¶ 11} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S CRIMINAL RULE 29 MOTION AS THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AS TO THE ELEMENT OF INTENT TO USE."

{¶ 12} "THE TRIAL COURT ERRED IN RENDERING A GUILTRY VERDICT AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 13} In her first assignment, Richards contends that the trial court erred when it overruled her Crim.R. 29 motion for acquittal with respect to the charge of possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Specifically, Richards argues that the evidence adduced by the State was insufficient to establish the "intent to use" element of the charged offense. In her second assignment of error, Richards argues that the trial court's guilty verdict was against the manifest weight of the evidence.

{¶ 14} Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher,* 6th Dist. Lucas No. L–06–1039, 2007-Ohio-3960. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

---

mootness by the State, we will address Richards' appeal. *See State v. Glenn*, 2d Dist. Montgomery No. 26776, 2016-Ohio-4887.

essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted.) *State v. Crowley,* 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

{¶ 15} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 16} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 17} This court will not substitute its judgment for that of the trier of facts on the

issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

**{¶ 18}** Richards was found guilty of possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), which provides that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia." Therefore, R.C. 2925.14(C)(1) requires the State to prove that the defendant intended to use the paraphernalia to ingest illegal drugs. Where a statute provides that an offense consists of an act committed with a specific intent, the mere doing of the act raises no presumption of a specific intent and such intent, as well as the act, must be pleaded and proved. *See State v. Smith*, 2d Dist. Clark No. 3013, 1994 WL 43105, *2 (Jan. 7, 1994). Thus, the evidence presented by the State must demonstrate that defendant knowingly possessed the cocaine/meth pipe with the purpose or intention of using it to ingest illegal drugs. *Id.*; *see also State v. Foster*, 2d Dist. Montgomery No. 17860, 2000 WL 216937, *2 (Feb. 25, 2000).

**{¶ 19}** Richards argues that the State failed to adduce sufficient evidence to establish any specific purpose or intention on her part to use the glass pipe found at the scene to ingest cocaine or methamphetamine. In support of her argument, Richards cites to *State v. Smith*, 2d Dist. Clark No. 3013, 1994 WL 43105. In *Smith*, the police observed the defendant removing an object from his pocket and throwing it on the ground. *Id.* at *1. On further investigation, the object was discovered to be a crack pipe. *Id.* We found that the evidence did not support a conviction under R.C. 2925.14(C)(1) because the evidence failed to demonstrate any purpose or intent of the defendant to use the pipe. *Id.* at *3. Significantly, in *Smith*, no evidence was adduced which established that the

glass pipe recovered by the police contained any illegal drug residue. *Id.* at *2.  In fact, the pipe itself was never tested by the police in order to determine whether it contained cocaine residue or other controlled substances. *Id.*  In *Smith*, we stated the following:

> *** To conclude that Smith had a purpose or intent to use the crack pipe simply because he possessed that device and such devices are commonly used to smoke crack cocaine would criminalize mere possession of drug paraphernalia and read out of R.C. 2925.14(C)(1) the further requirement imposed by the General Assembly that the offender have a purpose or intent to use the device possessed. To convict under that statute, the evidence presented by the State must demonstrate that the accused knowingly possessed the crack pipe with the purpose or intention of using it to ingest illegal drugs. The evidence presented in this case fails to demonstrate any purpose or intent by Smith to so use the crack pipe.

*Id.* at *3.

{¶ 20} Based on our previous holding in *Smith*, Richards argues that "[t]he State failed to offer any meaningful evidence on the essential element of intent to use." Richards also argues that because the mouthpiece end of the glass pipe was broken and jagged, she could not have used the pipe.  Richards even goes so far as to assert that under *Smith*, a defendant's possession of drug paraphernalia that tests positive for illegal drugs is insufficient to establish that he or she intended to utilize the item to ingest said contraband.  Richards, however, ignores our subsequent holding in *State v. Foster*, 2d Dist. Montgomery No. 17860, 2000 WL 216937 (Feb.25, 2000), wherein we distinguished our prior holding in *Smith. Id.* at *2.  In *Foster*, the defendant was found to be in

possession of a cocaine pipe that tested positive for cocaine residue. *Id.* at *1. Therefore, we found that "[t]he fact that a defendant charged with Possession of Drug Paraphernalia is in possession of a crack pipe containing crack cocaine residue is *** circumstantial evidence that might support a reasonable inference that the possession of the crack pipe was with purpose to use it." *Id.* at *2.

{¶ 21} In the instant case, the trial court found that Richards had the requisite intent to use the cocaine pipe beyond a reasonable doubt based upon the evidence presented by the State. It is undisputed that the glass pipe recovered by Officer Wolodkiewicz contained residue that laboratory analysis identified as cocaine and methamphetamine. From this evidence alone, the trial court could have inferred Richards' intent to use the pipe if it was satisfied by this evidence beyond a reasonable doubt. *See Foster* at *2. Viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found the essential element of "intent to use" in a conviction for possession of drug paraphernalia proven beyond a reasonable doubt. Additionally, the fact that the mouthpiece end of the glass pipe was broken and jagged did not preclude the trial court from finding Richards guilty of the charged offense. No evidence was adduced that the pipe was totally inoperable because the mouthpiece was slightly damaged. We therefore find that the trial court did not err by overruling appellant's Crim.R. 29 motion for acquittal and likewise conclude that the conviction is supported by sufficient evidence.

{¶ 22} In her second assignment, Richards argues that her conviction for drug paraphernalia is against the manifest weight of the evidence. As previously discussed, the State adduced evidence that Richards was the front seat passenger in a vehicle that

was stopped for having expired tags. After Richards and the other occupants of the vehicle were ordered out of the vehicle, a K-9 unit performed an open air sniff and alerted to the right side of the vehicle. The vehicle was searched, and the police discovered hypodermic needles in the rear section of the vehicle. The police found no other contraband in or around the vehicle during their search. While the two backseat occupants of the vehicle were placed in separate police cruisers, Richards and the driver of the vehicle were permitted to reenter the vehicle.

{¶ 23} Officer Wolodkiewicz testified that he and Officer Patterson escorted the driver back to the driver's seat while Richards was permitted to walk back to the front passenger seat unaccompanied. While they were standing on the driver's side of the vehicle, the officers heard the sound of glass hitting the ground as Richards got into the front passenger seat. Upon investigation, Officer Wolodkiewicz discovered a glass pipe lying on the pavement near the front passenger door. Officer Wolodkiewicz testified that the pipe was on the pavement approximately one foot away from the vehicle near the front running board. Officers Wolodkiewicz and Patterson both testified that they observed no furtive movements from the driver of the vehicle prior to hearing the glass pipe hit the ground, nor was anyone standing near Richards when she entered the vehicle from the front passenger side door directly near where the pipe was located. Moreover, both officers testified that they immediately recognized the sound of the glass pipe hitting the ground based upon their past law enforcement experience.

{¶ 24} Significantly, the pipe was tested and found to contain cocaine and methamphetamine residue. Although the mouthpiece of the pipe was damaged, the pipe was found to be still intact. Lastly, we note that evidence was adduced that Richards

was patted down for weapons after exiting the vehicle, and the glass pipe was not found. However, the pat down was a limited search for weapons. Moreover, neither Officer Wolodkiewicz nor Officer Patterson, the only witnesses who testified at trial, was the officer who patted Richards down. Therefore, neither officer would have been able to testify regarding the specifics of Richards' pat down search.

{¶ 25} Thus, having reviewed the record, we find no merit in Richards' manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton,* 2d Dist. Miami No. 2010–CA–27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the trial court quite reasonably could have credited the State's evidence which established that Richards was guilty of the offense for which she was convicted. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1).

{¶ 26} Richards' first and second assignments of error are overruled.

{¶ 27} Both of Richards' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Joshua T. Shaw
J. Joseph Hyde
Hon. Carl Sims Henderson